# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case Nos. 5D2023-2204
5D2023-2234
5D2023-2311
LT Case Nos. 2020-100954-CFDL
2020-CF-000814
2020-CF-356

_____

DEON JONES,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Courts for Volusia County, St. Johns County, and Flagler County.
Dawn D. Nichols, Judge.

William R. Ponall and Eric J. Sorice, of Ponall Law, Maitland, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Alyssa M. Williams, Assistant Attorney General, Daytona Beach, for Appellee.

August 16, 2024


EISNAUGLE, J.

Deon Jones appeals his judgment and sentence imposed after entering into an open plea, effectively negotiated between counsel for Jones and the trial judge, to resolve three cases in which Jones was charged with numerous counts of shooting into an occupied vehicle and criminal mischief.

Based on the open plea, Jones's anticipated sentence was five years in prison and $20,000 in ordered restitution. Jones also entered into a *Quarterman* agreement[1] which allowed him to remain out of custody until sentencing at a later date.

Jones failed to appear as agreed for sentencing and was eventually apprehended.[2] At a subsequent sentencing hearing where Jones was present, the trial judge sentenced him to the lowest permissible sentence (as reflected on the scoresheet) of twenty-four years in prison.

On appeal, Jones argues, inter alia, that the trial court erred in sentencing him above five years in prison because his failure to appear for sentencing was not willful. While it is true that "a violation of a *Quarterman*'s release must be willful," *Cruz v. State*, 303 So. 3d 285, 287 (Fla. 5th DCA 2020), Jones made no such argument below.

Instead, counsel argued for leniency because Jones communicated with his attorney and bondsman, did not flee, was just "a kid," and just "made a stupid, stupid decision not to show." Far from arguing that the trial court remained bound to a five-year sentence because the failure to appear was not willful, counsel argued:

---

[1] *See Quarterman v. State*, 527 So. 2d 1380 (Fla. 1988).

[2] Jones submitted a letter to the trial court purportedly signed by a nurse practitioner stating he was at the emergency room on the day he was required to appear for sentencing due to an anxiety attack, was treated with medication to calm his anxiety, and was released after a few hours.

I would ask the Court to stick with the five years that was originally offered and perhaps somehow limit his gain to something. Maybe he'd serve more than he thought he would serve during the five-year period. Because the actual time we thought he would serve, and Mr. Jones thought he would serve, would be less than that, because of gain time . . . .

If there is error here, it is not preserved. "To be preserved for appeal, the specific legal ground upon which a claim is based must be raised at trial and a claim different than that will not be heard on appeal." *Chamberlain v. State*, 881 So. 2d 1087, 1100 (Fla. 2004) (quoting *Spann v. State*, 857 So. 2d 845, 852 (Fla. 2003)); *see also* § 924.051(3), Fla. Stat. (2023). This rule on preservation "allows the lower tribunal to consider and resolve errors when they arise, rather than wait for the process of an appeal," and importantly, "serves the purpose of treating the parties, the court, and the judicial system fairly." *State v. Clark*, 373 So. 3d 1128, 1131 (Fla. 2023).

In this case, Jones's request for leniency did not put the trial court on notice of the separate and distinct argument that his failure to appear was not willful. *Cruz*, 303 So. 3d at 287. While counsel for Jones also informed the trial judge that Jones was at a medical facility on the day he failed to appear, when considering the context, this argument was to bolster counsel's request for leniency. Given that the argument raised on appeal is not preserved, we must affirm.

AFFIRMED.

LAMBERT, J., concurs.
MAKAR, J., concurs specially with opinion, in which
LAMBERT, J., also concurs.

3

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Case Nos. 5D2023-2204
5D2023-2234
5D2023-2311
Lt. Case Nos. 2020-100954-CFDL
2020-CF-000814
2020-CF-356

MAKAR, J., concurring specially.

I concur in affirmance and write separately to highlight a few takeaways from this case.

Deon Anthony Jones entered a *Quarterman* agreement requiring that he appear on April 27, 2023, for sentencing. *See Quarterman v. State*, 527 So. 2d 1380, 1381 (Fla. 1988). If he failed to appear he risked not receiving an exceptionally favorable sentence (five years with credit for time served) for the serious felonies he committed by shooting a BB gun into multiple occupied vehicles traveling on I-95. He failed to appear for sentencing, his defense counsel claiming Jones had been in the hospital with an anxiety attack. The trial judge revoked Jones's bond and issued a warrant for his arrest (he was surrendered voluntarily soon thereafter), saying she'd entertain a motion to consider documentation underlying Jones's absence later.

On the same day, Jones's counsel filed a motion to mitigate the forthcoming sentence, asserting that several factors weighed in favor of doing so. The State's written response countered that Jones did not appear for the initial sentencing date, that he had prior felonies, and that he was otherwise not entitled to mitigation. Neither side addressed whether Jones's failure to appear at the April 27th hearing was willful, a requirement to void the *Quarterman* agreement. *See Gee v. State*, 38 So. 3d 806, 807 (Fla. 2d DCA 2010) ("If a defendant fails to timely appear for sentencing as required by a plea agreement, the trial court is not permitted to ignore the agreement and impose a harsher term unless the evidence supports a finding that the defendant's failure to appear was willful.").

5

At the subsequent sentencing hearing, which Jones attended, the trial court considered letters and testimony from Jones, testimony from his grandmother, and testimony from a psychology expert, who opined as to Jones's immaturity and other factors affecting his judgment. Some of the evidence, primarily from Jones himself, could be considered relevant to whether his initial non-appearance was willful (such as his submission of a doctor's office letter), but neither the parties nor the trial judge brought up the issue. After hearing the testimony, reviewing the evidence, and considering argument and legal submissions of counsel, the trial judge (the same one who approved the *Quarterman* agreement) sentenced Jones to 24 years, which was the lowest level under sentencing guidelines.

Jones now appeals, asserting that the trial court erred in failing to make a finding that he willfully failed to appear for sentencing on April 27th and that he is entitled to be sentenced to the agreed-upon five years. For its part, the State argues that Jones failed to preserve the issue of whether his non-appearance was willful. It was, of course, the State's responsibility to seek to void the *Quarterman* agreement in the first instance, which was not done. And the State bore the burden to prove willfulness in an evidentiary hearing to prevail and nullify the agreed-to sentence. *See Richardson v. State*, 198 So. 3d 1075, 1076 (Fla. 5th DCA 2016) ("At this hearing, the State bears the burden of proving by a preponderance of the evidence that Richardson willfully failed to appear.").

The State did not do the necessaries to void the *Quarterman* agreement; but it is equally true that criminal defense counsel, who sees that a trial judge is contravening a *Quarterman* agreement, as occurred here at the sentencing hearing, has an obligation to object on the record and point out that to do so requires record evidence and a judicial finding that the defendant willfully failed to appear at the initial sentencing hearing. Whether it was intentional and strategic or an oversight, that objection did not occur in this case.

What did occur is like what happened in *Cruz v. State*, 303 So. 3d 285, 286–87 (Fla. 5th DCA 2020), where defense counsel focused solely on leniency in sentencing, choosing to make no objection

6

challenging the trial court's departure from the *Quarterman* agreement. In *Cruz*, the State moved to void the *Quarterman* agreement, but defense counsel "did not argue that the violation was not willful," apparently because, although there may have been good cause for his client's initial failure to appear (due to transportation issues), the client "subsequently failed to turn herself in for two months." *Id.* at 286. A similar strategic decision may have been made in this case, though Jones did not appear to be on board with it; indeed, on appeal, he urges error in the trial court's failure to appoint conflict-free counsel to allow him to withdraw his plea. These are matters for Rule 3.850 review, not in this direct appeal.

The point of *Cruz* is that defense counsel cannot present a case of leniency at sentencing and expect to preserve a claim that his client did not breach a *Quarterman* Agreement. In a *Quarterman* situation, where a potentially valid basis exists to show that a defendant's non-appearance was non-willful, defense counsel has an obligation to raise an objection where the trial court seeks to depart from the agreed-upon sentence without first making factual findings, supported by the record, that the defendant acted willfully. Because no such objection was made in the trial court, the issue was not preserved under *Cruz*.

Beyond the preservation issue, the lessons learned in this case are fourfold. First, criminal defendants must assiduously adhere to the terms of a *Quarterman* agreement, particularly the requirement that they timely appear for sentencing or risk drastic results, such as here, where a five-year sentence (with release at around age 30) was transformed into a twenty-four-year sentence (with release at around age 50). Given the nature of a *Quarterman* agreement, which grants a criminal defendant both leniency in and freedom pending sentencing, it makes no sense to choose to *not* show up at the designated time/place given what's at stake.

Second, the law erects a high hurdle for voiding a *Quarterman* agreement: proof that a defendant *willfully* failed to show up at sentencing. This standard isn't met when a defendant had a reason beyond his control for non-appearance. *See Johnson v. State*, 501 So. 2d 158, 161 (Fla. 3d DCA 1987) (noting that "only in the most merciless and draconian system of justice" would a failure beyond

7

one's control "result in a forfeiture of his bargained-for sentence"). Courts have upheld a range of good faith reasons that excuse appearance at sentencing, such as an accidental car breakdown, a letter to the judge beforehand and credible testimony explaining lack of transportation on the day of sentencing, a genuinely mistaken reading of the date on paperwork where no plausible reason for non-appearance existed, and an arrest for a traffic infraction on the day of sentencing. *See Peacock v. State*, 77 So. 3d 1285, 1288 (Fla. 4th DCA 2012) (compiling cases with valid excuses). Applied here, anxiety in advance of sentencing is understandable but not an excusable ground for non-appearance generally. Anxiety in some people can be extreme and incapacitating; but definitive documentation showing a clinically debilitating anxiety attack—i.e., something more than a cryptic note from a walk-in medical clinic—is advisable.

Third, if the State seeks to void a *Quarterman* agreement it should formally move to do so and demonstrate that the defendant's non-appearance was willful. As a general matter, it is in both the State's and the defendant's interest that a *Quarterman* agreement be upheld. In this case, for example, Jones now faces nineteen years of additional lost freedom that needlessly imposes almost $600,000 of increased incarceration costs on taxpayers.[*] No one questions that stern consequences should befall a recalcitrant criminal defendant who willfully fails to show up for sentencing. On the other hand, where the reason for nonappearance presents a close question as to willfulness, the decision to void a *Quarterman* agreement should be made with circumspection and proportionality as to overall consequences, e.g., is the imposition of two additional decades in prison for non-appearance cost-beneficial to society given that the agreed upon five-year sentence presumably met the criminal justice goals of deterrence, retribution, and reduced recidivism?

Fourth, because a *Quarterman* agreement is contractual in nature, it makes sense that the party seeking to void it should be

---

[*] For Fiscal Year 2022–23, it cost an average of $84.61 per day to house an inmate in Florida. *See* 2022–2023 Fla. Dep't of Corr. Ann. Rep. 41, https://fdc-media.ccplatform.net/content/download/3089/file/Annual_Report_22-23_V10.pdf.

the one to shoulder the evidentiary burden of proving a breach, here the State. It can be difficult for the State to prove willfulness, but that is the nature of the bargain struck; prevailing law says proof of a willful breach is required. Perhaps the standard for establishing a breach of a *Quarterman* agreement ought to be lowered, but it bears noting that section 843.15, Florida Statutes, which provides for criminal penalties where a defendant on bail fails to appear in court, uses the willfulness standard. § 843.15, Fla. Stat. (2024) (stating that a defendant on bail who "willfully fails to appear before any court or judicial officer as required" may be charged with a felony or misdemeanor). The State must demonstrate willfulness under this statute to punish a defendant for failure to appear, so it makes some sense that it bears a similar burden to prove that non-appearance at a *Quarterman* sentencing hearing was willful.

LAMBERT, J., concurs.

9